IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ERNEST PORTER, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 09-549 |
| | ) | Judge Ambrose |
| v. | ) | Magistrate Judge Bissoon |
| | ) | |
| JEFFREY A. BEARD, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

### I. RECOMMENDATION

For the reasons that follow, it is respectfully recommended that Defendants' Partial Motion to Dismiss (Doc. 33) be granted in part and denied in part, rendering Defendant Dennison the sole named Defendant in this case, and Plaintiff's claims that Dennison violated Plaintiff's right to practice his religion, and that he retaliated against Plaintiff for filing grievances, the sole remaining claims.

### II. REPORT

This is a prisoner civil rights case filed by Ernest Porter who alleges that his First Amendment right to free exercise of his religion was violated, and that he was retaliated against for filing grievances, when Defendant Dennison threw out the contents of his medicine bag on December 4, 2008. More specifically, Dennison allegedly "threw the contents" of Plaintiff's medicine bag into the garbage while Defendant Santoyo "looked on without intervention" (Doc. 28, p. 5). All Defendants have filed a Partial Motion to Dismiss (Doc. 33). Defendant Dennison also moves to dismiss all of Plaintiff's claims addressed to him, except for the retaliation claim. The remaining Defendants move to dismiss all claims against them on the

basis that they were not named in the grievance filed by Plaintiff and, therefore, the claims against them are barred. Plaintiff has responded to the motion (Docs. 40, 41 and 48).

    A.    **Applicable Standard**

Dismissal is appropriate under Federal Rule of Civil Procedure 12(b)(6) if, reading the complaint in the light most favorable to the plaintiff, and accepting all factual allegations as true, no relief could be granted under any "reasonable reading of the complaint" Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008). A complaint must be dismissed even if the claim to relief is "conceivable," because a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S.__, 129 S.Ct. 1937, 1949 (2009).

In resolving a Rule 12(b)(6) motion, the court primarily considers allegations in the complaint, although matters of public record, orders, items appearing in the record of the case, exhibits attached to the complaint and other pleadings filed by the plaintiff also may be taken into account. See Chester County Intermediate Unit v. Pennsylvania Blue Shield, 896 F.2d 808, 812 (3d Cir. 1990). The cCourt also may consider any "undisputably authentic documents attached as exhibits by the Defendant." Steinhardt Group v. Citicorp, 126 F.3d 144, 145 (3d Cir. 1997) (citations omitted).

    B.    **Analysis.**

        1.    **Failure to exhaust administrative remedies.**

No Section 1983 action may be commenced by a prisoner "until such administrative remedies as are available are exhausted." 42 U.S.C.A. § 1997e(a). An inmate is required to

"avail[ ] himself of every process at every turn" in the applicable prison administrative process. Spruill v. Gillis, 372 F.3d 218, 227-28 (3d Cir. 2004). "[I]t is beyond the power of this court – or any other – to excuse compliance with the exhaustion requirement, whether on the ground of futility, inadequacy or any other basis." Nyhuis v. Reno, 204 F.3d 65, 73 (3d Cir. 2000).

The "exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002). There are three steps in the Pennsylvania grievance process: (1) Initial Review pursuant to DC-ADM-804 Part VI.B of the inmate's filed grievance; (2) the first appeal from the Initial Review, or Appeal to Facility Manager pursuant to DC-ADM-804 Part VI.C; and (3) a final appeal, the Appeal to the Secretary's Office of Inmate Grievances and Appeals pursuant to DC-ADM-804 Part VI.D. Spruill, 372 F.3d at 232. An inmate's failure to comply with the procedural requirements of the prison's grievance system will result in a procedural default of the issue and will effectively bar the inmate from bringing his claim in federal court. Id. at 231. While a prisoner must comply with prison procedures, "compliance with the administrative remedy scheme will be satisfactory if it is substantial." Nyhuis, 204 F.3d at 77-78.

All Defendants, except for Defendant Dennison, argue that the claims against them should be dismissed because Plaintiff did not name anyone other than Dennison in the grievance he filed concerning the December 4, 2008 incident involving his medicine bag. Petitioner concedes that he did not name anyone other than Dennison during the grievance process, but he argues that he was not required to name all of the remaining Defendants. The question in this case is whether Plaintiff has substantially complied with the exhaustion requirement even though he did not name any of the other Defendants in his grievance.

3

In Jones v. Bock, 549 U.S. 199, 217 (2007), the Supreme Court held that exhaustion is not *per se* inadequate simply because an individual later sued is not named in a prison grievance. The Court made clear in Jones, however, that the necessity of naming an individual defendant in a grievance will be governed by the requirements of the applicable prison grievance procedure. Id., 549 U.S. at 217-18. "The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the [Prison Litigation Reform Act], that define the boundaries of proper exhaustion." Id.

In Spruill, the Court of Appeals for the Third Circuit examined the procedural requirements of the grievance system employed by the Pennsylvania Department of Corrections ("DOC") with respect to the naming of future defendants not named in an inmate grievance. The Spruill Court held that, to the extent the identity of a particular defendant is a "fact relevant to the claim," the DOC's grievance policy requires that the individual's identification be included in the inmate's statement of the facts on the grievance form. Id., at 234. "The purpose of the regulation here is to put the prison officials on notice of the persons claimed to be guilty of wrongdoing." Spruill, 372 F.3d at 234. However, the Supreme Court later held in Jones that "the primary purpose of a grievance is to alert prison officials to a problem, not to provide personal notice to a particular official that he may be sued." Jones, 127 S.Ct. at 923, quoting Johnson v. Johnson, 385 F.3d 503, 522 (5th Cir. 2004). Therefore, the question in this case is whether Porter's grievance alerting Defendants to the underlying problem, i.e., Dennison's actions on December 4, 2008, is sufficient to alert them that other prison personnel also are alleged to have participated in, or contributed to, the wrongdoing.

Plaintiff alleges in his Complaint that Defendant Santoyo was present during the cell search by Dennison, and that he stood by and watched as Dennison destroyed the contents of Plaintiff's medicine bag. No such allegation was made in Plaintiff's grievance, nor in any of the appeals from the denial of the grievance. Rather, the grievance and Plaintiff's later submissions during the administrative appeal process focus solely on Dennison's actions, and do not mention that anyone else was present or even nearby (Doc 3, pp. 23-33). This case is similar to the situation presented in Watts v. Herbik, 2010 WL 438443 (Slip Copy) (3d Cir., February 9, 2010). Watts alleged that he was denied medical care while imprisoned, and he sued the doctor and the medical assistant who treated him, as well as the prison's health care administrator, Robert Tretinik. Tretinik was not named in Watts's grievance, and the trial court granted his motion to dismiss. The Court of Appeals affirmed:

> The PLRA requires that a prisoner exhaust any available administrative remedies before bringing a federal claim concerning prison conditions. 42 U.S.C. § 1997e(a); Nyhuis v. Reno, 204 F.3d 65, 67 (3d Cir. 2000). This requirement includes a procedural default component. Spruill, 372 F.3d at 234. Per institutional policy, inmates must exhaust administrative remedies and **"identify any persons who may have information that could be helpful in resolving the grievance."** Id. at 234 (citing Pennsylvania's Department of Corrections policy). As Watts failed to mention Tretinik in his administrative grievance and did not place him on notice of alleged wrongdoing, Watts procedurally defaulted all claims against him.

Id., at *1 (emphasis added). Like Watts, the pleadings in this case, and the undisputed grievance record attached to the Complaint, conclusively establish that Porter did not name Santoyo in his grievance, nor did he put the prison on notice that any actions taken (or not taken) by Santoyo were part of the grievance. Because Plaintiff did not name Defendant Santoyo in his grievance, nor in the administrative appeals from the denial of that grievance, his administrative remedies

have not been exhausted as to any claims against Defendant Santoyo, and Santoyo is entitled to dismissal of the claims against him.

Plaintiff also claims that the remaining Defendants, Beard, Kennedy, Guyton and Folino, all supervisory personnel, failed to act on Plaintiff's numerous prior grievances against Dennison, thereby causing the constitutional violation in this case.  A state official in a supervisory role has no affirmative constitutional duty to supervise or discipline subordinates so as to prevent the violation of constitutional rights.  Brown v. Grabowski, 922 F.2d 1097, 1120 (3d Cir. 1990).  However, where a supervisory official knowingly permits a continuing custom or policy that results in harm to a plaintiff, Section 1983 liability may attach.  Colburn v. Upper Darby Twp., 838 F.2d 663, 673 (3d Cir. 1988), overruled in part on other grounds by Leatherman v. Tarrant Cty. Narcotics Int. & Coord. Unit, 507 U.S. 163, 168 (1993).  At a minimum, such liability attaches "only where there are both (1) contemporaneous knowledge of the offending incident or knowledge of a prior pattern of similar incidents, and (2) circumstances under which the supervisor's inaction could be found to have communicated a message of approval to the offending subordinate."  Colburn, 838 F.2d at 673 (quoting Chinchello v. Fenton, 805 F.2d 126, 133 (3d Cir. 1986)).  In this respect, prior complaints made by a prisoner, whether in the form of a grievance or otherwise, may be sufficient to place a prison official on notice of alleged continuing abuse by prison staff and, therefore, may show actual knowledge of an alleged constitutional violation and acquiescence in the events forming the basis of a prisoner's claims. See Atkinson v. Taylor, 316 F.3d 257, 270-271 (3d Cir. 2003) (refusing to hold as a matter of law that correspondence or conversations with prison officials do not constitute sufficient evidence of actual knowledge and acquiescence). See also Vance v. Peters, 97 F.3d 987, 993 (7th Cir. 1996) ("[A] prison official's knowledge of prison conditions learned from an

inmate's communications can, under some circumstances, constitute sufficient knowledge of the conditions to require the officer to exercise his or her authority and to take the needed action to investigate and, if necessary, to rectify the offending condition.").

Defendants Beard, Kennedy, Guyton and Folino assert that the claims against them in their supervisory capacity, premised as they are on facts available to Plaintiff when he filed his grievance against Dennison (i.e., a claim that their prior failure to discipline Dennison for other alleged misconduct led to the instant constitutional violation), should have been presented in Plaintiff's grievance and are subject to the same type of "failure to name" procedural default as the claims against Defendant Santoyo.

In Robinson v. Johnson, 343 Fed.Appx. 778 (3d Cir. 2009), the inmate complained about the "yard procedures" for inmates and named in his grievance only the corrections officers he dealt with concerning his access to the yard. Robinson thereafter sued supervisory personnel (Horn and Johnson) even though they were not specifically named in his grievance. The Court of Appeals first noted that Robinson was challenging a DOC policy, and that he would likely not have had access to the names of the persons implementing that policy during his grievance proceedings. And, in any event, the court noted that Plaintiff clearly challenged the constitutionality of the prison policy as well as the independent actions of individual guards. Therefore, although they were not named in the prisoner's grievance, the court found "that the relevant policymakers, Horn and Johnson, were 'fairly within the compass' of Robinson's grievance." Id., at 782.

In this case, Porter **was** aware of the names of the supervisory personnel who dealt with his prior grievances against Officer Dennison. Thus, unlike Robinson, Porter **could** be expected to know at the time he filed his grievance which supervisory personnel allegedly caused

7

Dennison's actions by failing to discipline him in the past. Moreover, Porter's grievance and the records of the grievance appeal process show that Porter complained only about Dennison's actions on December 4, 2008, and he did not assert, at any point, that Dennison acted as he did due to a prior failure to discipline and did not otherwise challenge the constitutionality of prison policy. Therefore, unlike Robinson, the supervisory personnel in this case could not have been aware from Porter's grievance that their actions were at issue or that they were "fairly within the compass" of Porter's grievance.

In fact, this case is more like Johnson v. Townsend, 314 Fed.Appx. 436 (3d Cir. 2008), where the issue involved a prisoner's claims concerning allegedly retaliatory conduct by a specific corrections officer, and the failure of supervisory personnel to act on the prisoner's complaints. In Johnson, the Court of Appeals found that "[t]he initial grievance may have alerted officials to a potential problem regarding Johnson's work schedule and compensation claim and the ensuing appeals of his disagreement with the grievance officers' review, **but it did not alert them to the specific acts of unconstitutional conduct they allegedly committed**." Id., at 442-43 (emphasis added). Therefore, the court found it was "not at all clear" that the supervisory personnel "were 'fairly within the compass'" of Johnson's grievance. 314 Fed.Appx. at 442-443. The same analysis applies here. None of the supervisory Defendants were alerted to the specific acts they were alleged to have committed, or to their alleged part in encouraging Dennison's conduct. The claims against Defendants Beard, Kennedy, Guyton and Folino should be dismissed due to Plaintiff's failure to name them in his grievance, and the resultant procedural default during the administrative appeals process.

Although the finding of procedural default bars all claims against Defendants Santoyo, Beard, Kennedy and Guyton, the Court will address Defendants' remaining arguments in the alternative (and because the arguments also are made by Defendant Dennison).

### 2. Official Capacity claims and State law claims.

Defendants assert that Plaintiff's claims against them in their "official capacities" are the functional equivalent of claims against the Commonwealth of Pennsylvania and, hence, are barred. Indeed, a lawsuit against the Commonwealth of Pennsylvania would be barred by the Eleventh Amendment. Quern v. Jordan, 440 U.S. 332, 340-341 (1979). When individual Commonwealth employees are sued in their official capacity, the action is considered to be against the Commonwealth itself. See Kentucky v. Graham, 473 U.S. 159, 166 (1985). The immunities available to the individual Defendants sued in their official capacity are the same as those possessed by the Commonwealth and, accordingly, Plaintiff's "official capacity" Section 1983 claims are barred and Defendants are entitled to dismissal of have those claims. Id., at 167.

Defendants also move to dismiss any state law claims raised against them on the basis that Pennsylvania provides immunity from suit for officials and employees acting within the scope of their employment. 42 Pa. Cons. Stat. Ann. §§ 8501, 8522. To overcome the defense of sovereign immunity under Pennsylvania law, Porter must show both that he possesses "a common law or statutory cause of action against a Commonwealth party" and "that the cause of action falls within one of the exceptions to sovereign immunity contained in Section 8522(b)." Pennsylvania Turnpike Commission v. Nationwide Trucking Services, Inc., 319 F. Supp.2d 569, 579 (W.D. Pa. 2004) (internal citation omitted). These exceptions are limited in scope, and are to be strictly construed. White by Pearsall v. School Dist. of Phila., 718 A.2d 778, 779 (Pa. 1998). The Court has reviewed the exceptions to sovereign immunity available under

Pennsylvania law, and can find none that are arguably applicable to Porter's claims. Defendants are entitled to dismissal of all state law claims against them in their individual capacities because they are immune from suit.

### 3. First Amendment claim.

"Convicted prisoners do not forfeit all constitutional protections by reason of their conviction and confinement in prison," Bell v. Wolfish, 441 U.S. 520, 545 (1979), including the protections of the First Amendment and its directive that no law shall prohibit the free exercise of religion. O'Lone v. Estate of Shabazz, 482 U.S. 342, 348 (1987). "All prisoners must be afforded reasonable opportunities to 'exercise the religious freedom guaranteed by the First and Fourteenth Amendment.'" Small v. Lehman, 98 F.3d 762, 765 (3d Cir.1996) (quoting Cruz v. Beto, 405 U.S. 319, 322 n. 2 (1972)). Once a prisoner demonstrates a sincerely held religious belief, he may establish that a prison regulation or practice violates the right to free exercise of religion by showing that it violates the "reasonableness test" set forth in Turner v. Safley, 482 U.S. 78, 89 (1987).

Here, Plaintiff alleges that Defendant Dennison seized and destroyed his medicine bag, even though DOC regulations permitted Plaintiff to possess a medicine bag. Defendants cite to Caldwell v. Folino, 2009 WL 1929905, *9 (W.D.Pa., July 1, 2009) (Hay, M.J.), for the proposition that a prison regulation permitting officers to search a prisoner's medicine bags does not violate a prisoner's First Amendment right to free exercise of religion. Indeed, prison regulations prohibiting possession of various type of religious property have been upheld where the regulation is "reasonably related" to legitimate security concerns. See, e.g., Bettis v. Delo, 14 F.3d 22, 23 (8th Cir. 1994) (regulations prohibiting ceremonial pipes, medicine bags, eagle claws, and altar stones in administrative segregation area of prison did not violate inmates' First

Amendment right to practice religion due to prison's legitimate security interests).  Here, however, the Court cannot engage in the normal Turner analysis because Defendant Dennison is alleged to have acted **in violation** of a prison regulation **expressly permitting** Porter to possess the medicine bag.  Therefore, unlike Caldwell and Bettis, there does not appear to be a legitimate security concern justifying the destruction of the medicine bag.  Plaintiff has made a colorable claim that Defendant Dennison violated the First Amendment and, accordingly, the motion to dismiss should be denied in this respect.

    **4.      RLUIPA claim for money damages.**

The Religious Land Use and Institutionalized Persons Act ("RLUIPA") does not support damage claims against state officials in their individual capacity.  Sharp v. Johnson, 2008 WL 941686, at *19 (W.D. Pa. 2008);  Brown v. Department of Corrections Pennsylvania, 2007 WL 4322980, at *16 (W.D. Pa. 2007) (prison official "is not liable for damages in his individual capacity because RLUIPA does not authorize money damages against individuals") (citing cases).  Thus, there can be no damages liability against any of the Defendants in their individual capacities, and claims for monetary damages under RLUIPA should be dismissed.

    **5.      Fourteenth Amendment claim for destroyed property.**

Plaintiff's rights under the Due Process Clause in the context of a seizure or destruction of property are limited to a claim that no adequate post-deprivation remedy exists.  Hudson v. Farmer, 468 U.S. 517, 533 (1984). The Court of Appeals for the Third Circuit has held that the Pennsylvania Department of Corrections' grievance procedure "provides an adequate post-deprivation remedy." Durham v. Department of Corrections, 173 Fed.Appx. 154, 157 (3d Cir. 2006).  Thus, to the extent that Porter is making a due process claim premised upon the seizure of his property, that claim should be dismissed.

**6.     Fourth Amendment claim.**

Likewise, the Fourth Amendment is not implicated by the seizure or destruction of Plaintiff's medicine bag because the "proscription against unreasonable searches does not apply within the confines of the prison cell." Hudson, 468 U.S. at 526.

**7.     Due Process – Explicit Source Rule.**

Plaintiff's attempt to frame his denial of religious freedom as a denial of substantive due process is improper because the First Amendment "provides an explicit textual source of constitutional protection" and "that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims." Albright v. Oliver, 510 U.S. 266, 272 (1994) (quoting Graham v. Connor, 490 U.S. 386, 395 (1989)).

**8.     Fifth Amendment.**

Plaintiff identifies the Fifth Amendment as a source of rights violated in this case but fails to explain how it applies. This claim should be dismissed as well.

**9.     Pennsylvania Constitution.**

Porter's claim for money damages under the Pennsylvania Constitution should be dismissed. Douris v. Schwieker, 229 F.Supp.2d 391 (E.D. Pa. 2002) (explaining that although Pennsylvania courts have not yet addressed the issue, federal courts have consistently held that no private cause of action is available under the Pennsylvania Constitution).

**10.    Mental and emotional damages.**

Section 1997e(e) of the PLRA prohibits compensatory damages for mental or emotional injury absent allegations of physical injury. 42 U.S.C. § 1997e(e); Mitchell v. Horn, 318 F.3d 523, 534 (3d Cir. 2003). All of Porter's claims for mental and emotional damages should be

dismissed because he has not alleged any physical injury.  Allah v. Al-Hafeez, 226 F.3d 247, 251 (3d Cir. 2000).

### III.   CONCLUSION

For the reasons set out in this Report and Recommendation, it is respectfully recommended that Defendants' Partial Motion to Dismiss (Doc. 33) be granted in part and denied in part.  The sole claims remaining in this case should be Plaintiff's claims that Dennison violated his right to practice his religion, and that Dennison retaliated against him due to his filing of grievances.

In accordance with the Magistrate's Act, 28 U.S.C. § 636 (b)(1)(B) and (C), and Rule 72.D.2 of the Local Rules for Magistrates, objections to this Report and Recommendation are due by May 26, 2010.


May 12, 2010                                                              s/Cathy Bissoon
                                                                                      CATHY BISSOON
                                                                                      UNITED STATES MAGISTRATE JUDGE


cc:
ERNEST PORTER
AY-7434
SCI Greene
175 Progress Drive
Waynesburg, PA 15370